773 A.2d 665

DAVID A. GARFINKEL, M.D., PLAINTIFF–APPELLANT, v. MOR-
RISTOWN OBSTETRICS & GYNECOLOGY ASSOCIATES, P.A.,
DAVID E. JACOBWITZ, M.D., AND JOSEPH RAMIERI, M.D.,
DEFENDANTS–RESPONDENTS, AND LIFELINE MEDICAL
ASSOCIATES, DEFENDANT.

Argued March 26, 2001—Decided June 13, 2001.

*Andrew Dwyer* argued the cause for appellant, (*The Dwyer Law Firm*, attorneys).

*Glenn A. Montgomery* argued the cause for respondents Morristown Obstetrics & Gynecology Associates, P.A. and Joseph Ramieri, M.D., (*Pollock, Montgomery & Chapin,* attorneys).

*James E. Shepard* argued the cause for respondent, David E. Jacobwitz, M.D., (*Fein, Such, Kahn & Shepard,* attorneys; *Brian W. Kincaid,* of counsel and on the brief).

*Jeffrey C. Burstein,* Senior Deputy Attorney General, argued the cause for amicus curiae, New Jersey Division on Civil Rights,

(*John J. Farmer, Jr.*, Attorney General of New Jersey, attorney; *James R. Michael*, Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

VERNIERO, J.

The principal issue in this appeal is whether plaintiff waived his right to sue his former employer in the Law Division for alleged violations of the Law Against Discrimination, *N.J.S.A.* 10:5–1 to – 42(LAD). Plaintiff is a physician formerly associated with an obstetrics and gynecology practice in Morris County. He claims that he was unlawfully discharged from that practice on account of his gender. He also asserts under the common law that his employer's conduct constituted defamation and tortious interference with his economic advantage.

The trial court determined that plaintiff's claims, including those asserted under the LAD, were subject to arbitration pursuant to the parties' written employment agreement. That agreement, which plaintiff signed prior to joining the practice, provides that "any controversy arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration[.]" The Appellate Division affirmed the trial court's determination.

We now reverse. We hold that because of its ambiguity the language contained in the arbitration clause does not constitute an enforceable waiver of plaintiff's statutory rights under the LAD. Therefore, plaintiff may proceed with his discrimination action in the Law Division. Consistent with principles of judicial economy, plaintiff's common-law claims should be tried in the same action as the LAD claim.

I.

David Garfinkel, M.D. (plaintiff) and the Morristown Obstetrics & Gynecology Associates, P.A. (MOGA) entered into an employment agreement on August 9, 1996. The agreement sets forth plaintiff's work obligations, salary, eligibility for stock ownership

in the association, and restrictions on subsequent employment. In respect of termination, the agreement enumerates the circumstances under which either party may terminate employment and the remuneration that would be due plaintiff in the event of termination.

Critical to the disposition of this appeal, paragraph eighteen of the agreement provides:

Except as otherwise expressly set forth in Paragraphs 14 or 15 hereof, any controversy or claim arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration in Morristown, New Jersey, in accordance with the rules then obtaining of the American Arbitration Association, and judgement [sic] upon any reward [sic] rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof.

By its express language, the arbitration clause does not apply to post-termination employment restrictions (paragraph fourteen) and pension benefits (paragraph fifteen). We note, however, that paragraph fifteen provides that plaintiff shall share in the employer's pension or profit sharing plan and does not, on its face, contemplate litigation. Instead, paragraph thirteen, which pertains to severance pay and is not expressly excluded from the arbitration clause, contemplates certain action by a "court of competent jurisdiction" in the event of plaintiff's discharge. We thus assume that the drafters of the arbitration provision inadvertently referred to paragraph fifteen when they actually intended to refer to paragraph thirteen.

In January 1998, MOGA allegedly informed plaintiff that he would not be permitted to exercise his option to become a shareholder because he was "born the wrong sex." Nonetheless, MOGA continued to employ plaintiff. On March 6, 1998, one of the shareholder-physicians of MOGA informed plaintiff that he was being terminated. Two days later, another MOGA shareholder informed plaintiff that he should not return to work. The following day that same shareholder allegedly stated to plaintiff that the reason for his termination was that he "did not attract patients well because he was male[.]"

In September 1998, plaintiff filed this action in the Law Division against MOGA and its two shareholders (defendants), as well as Lifeline Medical Associates, described by plaintiff as a successor in interest to MOGA. Plaintiff's complaint alleges that defendants breached the employment agreement, violated the covenant of good faith and fair dealing implicit in that agreement, violated the LAD, tortiously interfered with plaintiff's prospective economic advantage, and defamed him. In its answer and counterclaim, MOGA alleges that plaintiff misrepresented the extent of his practice prior to entering into the agreement, and wrongfully solicited patients away from MOGA for his exclusive economic benefit.

On the basis of the arbitration clause of the agreement (paragraph eighteen), defendants moved to dismiss plaintiff's complaint. Plaintiff responded that his consent to that clause was not voluntary because it was a non-negotiable provision, that the clause itself was unenforceable because it precluded access to the courts in respect of a discrimination claim, and that defendants waived operation of the clause by virtue of their answer and counterclaim. The trial court granted defendants' motion, ruling that the arbitration provision was binding in respect of all claims, including those asserted under the LAD. The court concluded that the parties had made a knowing and voluntary choice to arbitrate their disputes and that public policy favored arbitration in this setting.

In a reported opinion, the Appellate Division affirmed the trial court's determination. *Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 333 *N.J.Super.* 291, 755 *A.*2d 626 (App.Div. 2000). Noting the general rule that parties may agree to arbitrate statutory claims, the panel held that the broad language of paragraph eighteen constituted such an agreement. *Id.* at 300, 302, 755 *A.*2d 626. The court likewise concluded that plaintiff's common-law claims must be settled by arbitration. *Id.* at 303–04, 755 *A.*2d 626. We granted plaintiff's petition for certification. 166 *N.J.* 606, 767 *A.*2d 484 (2000).

We also granted the Attorney General's motion on behalf of the New Jersey Division on Civil Rights (the Division) for leave to appear as *amicus curiae.* The Division does not object to the use of arbitration to resolve discrimination complaints. It does, however, oppose "compulsory and binding arbitration in settings where it is based on a vaguely worded clause or where the waiver was not voluntary." The Division contends that the Court need not address the issue of voluntariness because the arbitration clause in plaintiff's agreement is ambiguous on its face. On that basis alone, the Division asserts, the clause should not be enforced.

II.

A.

We begin our analysis by reaffirming that "the clear public policy of this State is to abolish discrimination in the work place." *Fuchilla v. Layman,* 109 *N.J.* 319, 334, 537 *A.*2d 652, *cert. denied,* 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.*2d 51 (1988). Enacted in 1945, the LAD is designed to further that policy, namely, "to protect not only the civil rights of individual aggrieved employees but also to protect the public's strong interest in a discrimination-free workplace." *Lehmann v. Toys 'R' Us, Inc.,* 132 *N.J.* 587, 600, 626 *A.*2d 445 (1993); *see also Fuchilla, supra,* 109 *N.J.* at 334, 537 *A.*2d 652 (observing that "the overarching goal of the [LAD] is nothing less than the eradication 'of the cancer of discrimination' ") (citation omitted).

The LAD provides a mechanism by which victims of discrimination may seek redress for their injuries. Pertinent to this appeal, the statute provides aggrieved employees with a choice of forum to prosecute their claims. The employee may pursue an administrative remedy by filing a verified complaint with the Division, or may file suit in the Law Division of the Superior Court. *N.J.S.A.* 10:5–13; *Hernandez v. Region Nine Hous. Corp.,* 146 *N.J.* 645, 652, 684 *A.*2d 1385 (1996) (tracing history of election-of-remedies provision under LAD and comparing it to analogous

federal statutes). The choice of forum established by the LAD is an integral feature of the statute. One court has explained:

[T]here is a clear mandate of public policy permitting persons alleging violations of the LAD to proceed administratively or judicially. Within the LAD there is an established right permitting a party to seek redress in the courts directly or through the Division. The history of the [LAD] also indicates that there is a clear right to a trial by jury for the aggrieved. The Division [on] Civil Rights was empowered by the LAD to investigate and prosecute discrimination claims. The Division was also given broad rights to remedy the effects of unlawful discrimination[.]

[*Ackerman v. The Money Store*, 321 *N.J.Super.* 308, 324, 728 *A.2d* 873 (Law Div.1998) (internal citations omitted).]

In addition to furthering the strong aims of the LAD, our jurisprudence has recognized arbitration as a favored method for resolving disputes. *See Barcon Assocs. v. Tri–County Asphalt Corp.*, 86 *N.J.* 179, 186, 430 *A.2d* 214 (1981) (noting long-standing practice of arbitration in New Jersey, and statutes and case law in favor of that practice). In that regard, the Appellate Division has observed:

The ancient practice of arbitration "[i]n its broad sense, [ ] is a substitution, by consent of the parties, of another tribunal for the tribunal provided by the ordinary processes of law. The object of arbitration is the final disposition, in a speedy, inexpensive, expeditious and perhaps less formal manner, of the controversial differences between the parties."

[*Carpenter v. Bloomer*, 54 *N.J.Super.* 157, 162, 148 *A.2d* 497 (App.Div.1959) (quoting *E. Eng'g Co. v. Ocean City*, 11 *N.J. Misc.* 508, 510–11, 167 *A.* 522 (Sup.Ct.1933)).]

That parties to an agreement may waive statutory remedies in favor of arbitration is a settled principle of law in this State. *See, e.g., Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ.*, 78 *N.J.* 122, 140, 393 *A.2d* 267 (1978) (observing that "propriety of a contractual waiver of statutory rights is well-established"). The Court affirms that principle both as a general rule and as applied specifically to claims arising under the LAD. *Accord Quigley v. KPMG Peat Marwick, LLP*, 330 *N.J.Super.* 252, 259, 749 *A.2d* 405 (App.Div.) (recognizing within context of LAD that courts have enforced arbitration of discrimination claims as provided in employment agreements), *certif. denied*, 165 *N.J.* 527, 760 *A.2d* 781 (2000); *Alamo Rent A Car, Inc.*

v. *Galarza,* 306 *N.J.Super.* 384, 389, 703 *A.*2d 961 (App.Div.1997) (concluding that employee may surrender right to pursue statutory LAD claim in favor of arbitration).

Because of the favored status afforded to arbitration, "[a]n agreement to arbitrate should be read liberally in favor of arbitration." *Marchak v. Claridge Commons, Inc.,* 134 *N.J.* 275, 282, 633 *A.*2d 531 (1993). That favored status, however, is not without limits. The Court has stressed that "[i]n the absence of a consensual understanding, neither party is entitled to force the other to arbitrate their dispute. Subsumed in this principle is the proposition that only those issues may be arbitrated which the parties have agreed shall be." *In re Arbitration Between Grover & Universal Underwriters Ins. Co.,* 80 *N.J.* 221, 228, 403 *A.*2d 448 (1979). In respect of specific contractual language, "[a] clause depriving a citizen of access to the courts should clearly state its purpose. The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." *Marchak, supra,* 134 *N.J.* at 282, 633 *A.*2d 531. As we have stressed in other contexts, a party's waiver of statutory rights "must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively." *Red Bank Reg'l Educ. Ass'n, supra,* 78 *N.J.* at 140, 393 *A.*2d 267. In the same vein, a "court may not rewrite a contract to broaden the scope of arbitration[.]" *Yale Materials Handling Corp. v. White Storage & Retrieval Sys., Inc.,* 240 *N.J.Super.* 370, 374, 573 *A.*2d 484 (App. Div.1990).

B.

In applying those tenets, we first note the approach taken by the Appellate Division in two recent decisions, *Quigley v. KPMG Peat Marwick, LLP, supra,* 330 *N.J.Super.* 252, 749 *A.*2d 405, and *Alamo Rent A Car, Inc. v. Galarza, supra,* 306 *N.J.Super.* 384, 703 *A.*2d 961. In *Quigley,* the court upheld the right of an employee to pursue the LAD's statutory remedies, notwithstand-

ing that the employee had agreed to an arbitration clause similar to the clause at issue here. The employee in that case, a senior manager, brought a LAD action against his employer for wrongful termination on account of age. Prior to his discharge, the employee had signed a manager's agreement that provided in part that " '[a]ny claim or controversy between the parties arising out of or relating to this Agreement or the breach thereof, or in any way related to the terms and conditions of employment . . ., shall be settled by arbitration[.]' " *Id.* at 257, 749 *A.*2d 405.

The court concluded that the arbitration clause was ambiguous in respect of the employee's LAD claim and thus "should be construed against the interest of defendant." *Id.* at 270, 273, 749 *A.*2d 405. In reaching that conclusion, the panel noted that the clause did not refer specifically to disputes arising from termination or to claims redressable by the LAD or similar statutes. *Id.* at 272, 749 *A.*2d 405. The court found that the phrase "arising out of [ ] this Agreement," coupled with the phrase "terms and conditions of employment," suggested that the parties intended "that a question concerning the meaning of the agreement language, or a dispute concerning the enforcement of a term or condition of employment was of the type of claim subject to arbitration." *Id.* at 273, 749 *A.*2d 405. The court considered those items to be distinct from a statutory claim. *Ibid.* The panel observed that "[i]f defendant wanted to enter into an agreement to bind plaintiff to arbitration under all circumstances, it should have written an inclusive arbitration clause." *Ibid.*

The Appellate Division reached the same result in *Alamo Rent A Car, Inc. v. Galarza, supra,* 306 *N.J.Super.* 384, 703 *A.*2d 961. In that case, the court found that the parties' arbitration clause was inadequate to constitute a waiver of the employee's remedies under the LAD. The employee in *Alamo* alleged that her employer had violated the LAD in its dealings with her. *Id.* at 387, 703 *A.*2d 961. The employee had signed a standardized employment manual, known as the "FamPact," which set forth the terms and conditions of employment. *Ibid.* The FamPact provided in part

that " '[i]f I claim that [the employer] has violated this FamPact, I agree that the dispute shall be submitted to and resolved through binding arbitration[.]' " *Ibid.*

The court found that the FamPact language was ambiguous in respect of the employee's discrimination claim. The court reasoned:

... No reading of the [FamPact] arbitration clause clearly and unmistakably establishes that [the employee] waived her right to pursue her LAD claim. By its very terms, the [ ] arbitration clause applies only to disputes under the [FamPact] not controversies arising under the LAD. If [the employer] wanted to enter into a contract to bind [the employee] to arbitration under all circumstances, it should have written an inclusive arbitration clause. This is not a difficult chore....

. . . .

The [ ] arbitration clause does not approach ... the kind of language which we view as more fully ensuring that a waiver of statutory remedies is indeed knowing and voluntar[y]. On its face, it is simply inadequate to require arbitration of any issue other than a [FamPact] violation.

[*Id.* at 394–95, 703 *A.*2d 961.]

■ We reason similarly and conclude that paragraph eighteen of the parties' agreement is insufficient to constitute a waiver of plaintiff's remedies under the LAD. The clause states that "any controversy or claim" that arises from the agreement or its breach shall be settled by arbitration. That language suggests that the parties intended to arbitrate only those disputes involving a contract term, a condition of employment, or some other element of the contract itself. Moreover, the language does not mention, either expressly or by general reference, statutory claims redressable by the LAD. As noted, paragraph eighteen excepts from its purview the two paragraphs of the agreement pertaining to post-termination restrictions and severance pay. Those exceptions further suggest that the parties intended disputes over the terms and conditions of the contract, not statutory claims, to be the subject of arbitration.

■ Defendants urge a contrary conclusion, arguing that the language of paragraph eighteen is sufficient by its plain terms to

encompass plaintiff's LAD claim. We disagree. Although we might interpret the paragraph to cover any dispute involving a term or condition of employment, the clause is silent in respect of plaintiff's statutory remedies. To enforce a waiver-of-rights provision in this setting, the Court requires some concrete manifestation of the employee's intent as reflected in the text of the agreement itself. "In interpreting a contract, '[i]t is not the real intent but the intent expressed or apparent in the writing that controls.'" *Quigley, supra,* 330 *N.J.Super.* at 266, 749 *A.*2d 405 (quoting *Friedman v. Tappan Dev. Corp.,* 22 *N.J.* 523, 531, 126 *A.*2d 646 (1956)).

■ To reiterate, the policies that support the LAD and the rights it confers on aggrieved employees are essential to eradicating discrimination in the workplace. The Court will not assume that employees intend to waive those rights unless their agreements so provide in unambiguous terms. That said, we do not suggest that a party need refer specifically to the LAD or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights. To pass muster, however, a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination. It should also reflect the employee's general understanding of the type of claims included in the waiver, *e.g.,* workplace discrimination claims. Along those lines, the court in *Alamo* aptly observed:

> The better course would be the use of language reflecting that the employee, in fact, knows that other options such as federal and state administrative remedies and judicial remedies exist; that the employee also knows by signing the contract, those remedies are forever precluded; and that, regardless of the nature of the employee's complaint, he or she knows that it can only be resolved by arbitration.
>
> [*Alamo, supra,* 306 *N.J.Super.* at 394, 703 *A.*2d 961.]

Defendants also assert that plaintiff should be bound to the arbitration provision because he is "a medical professional who negotiated the complex agreement and a supplement thereto with the assistance of counsel." *Garfinkel, supra,* 333 *N.J.Super.* at 302, 755 *A.*2d 626. In essence, defendants argue that as a highly-

trained professional, plaintiff should be precluded from claiming that he agreed to the arbitration clause against his will or without understanding the consequences of his action. In their brief, defendants argue that plaintiff stands in stark contrast to the employee in *Quigley* who, as an existing manager, "had limited bargaining power, or options, when [the employer] imposed the agreement on him."

Defendants suggest that the Court should focus predominately on plaintiff's level of sophistication to ensure that he acted of his own volition. That suggestion is misplaced. Irrespective of plaintiff's status or the quality of his counsel, the Court must be convinced that he actually intended to waive his statutory rights. An unambiguous writing is essential to such a determination. See *Alamo, supra,* 306 *N.J.Super.* at 393, 394–95, 703 *A.*2d 961 (observing that clear and unequivocal language in waiver clause "more fully ensur[es] that a waiver of statutory remedies is indeed knowing and voluntar[y]").

In sum, we are satisfied that plaintiff's purported waiver of his statutory remedies is not reflected in the language of the arbitration clause. Because the choice of forum permitted by the LAD is an integral component of the statute, we will not assume that an employee intends to surrender that choice in favor of arbitration unless that intention has been "clearly and unmistakably established[.]" *Red Bank Reg'l Educ. Ass'n, supra,* 78 *N.J.* at 140, 393 *A.*2d 267. The arbitration clause in plaintiff's agreement does not satisfy that test. Our approach strikes the appropriate balance between fostering the salutary goals of the arbitration system and ensuring that the choice-of-forum provision under the LAD is preserved for the benefit of aggrieved employees.

## III.

We briefly address the question whether plaintiff's common-law claims should be tried in the Law Division along with the LAD claim, or whether they should be resolved separately by arbitra-

tion. As a general rule, courts have construed broadly worded arbitration clauses to "encompass[ ] tort, as well as contract claims." *Bleumer v. Parkway Ins. Co.*, 277 *N.J.Super.* 378, 405, 649 *A.*2d 913 (Law Div.1994). Moreover, the court in *Fleck v. E.F. Hutton Group, Inc.*, 891 *F.*2d 1047 (2d Cir.1989), considered the arbitrability of a defamation claim that arose after the employment agreement had expired. The court held that post-termination torts are subject to arbitration when the claims " 'involve significant aspects of the employment relationship[.]' " *Id.* at 1053 (quoting *Morgan v. Smith Barney, Harris Upham & Co.*, 729 *F.*2d 1163, 1167 (8th Cir.1984)).

In keeping with those principles, the Court assumes, without deciding, that plaintiff's common-law claims are subject to arbitration. The question, then, is whether notions of judicial economy dictate the joinder of those claims in a single Law Division action. The Court concludes that plaintiff's claims should be so joined. "Just as we view piecemeal litigation as anathema, we also look with disfavor upon the unnecessary bifurcation of disputes between judicial resolution and arbitration." *Ohio Cas. Ins. Co. v. Benson*, 87 *N.J.* 191, 199, 432 *A.*2d 905 (1981). In view of our disposition in respect of plaintiff's LAD claim, the matter is remanded for resolution of all issues, including plaintiff's common-law allegations, in a single Law Division action.

IV.

The judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.