**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5370-18T3

PRINCETON ROYAL EVENTS,
LLC, d/b/a PRINCETON ROYAL
LEGENDS,

     Plaintiff-Appellant,

v.

"PRITAM" a/k/a PRITAM
CHAKRABORTY, SURINDER
PALSINGH KALRA, a/k/a
KARL KALRA, LIVE2U LLC,
and AANAND DAWDA, a/k/a
ANAND DAWDA,

     Defendants-Respondents,

and

DR. SANJAY GUPTA, DR.
KAVITA GUPTA, AMERICAN
PAIN ASSOCIATION, INC.,
KWAN ENTERTAINMENT
& MARKETING SOLUTIONS,
AVINASH BIDAIA, and
CINEMA ON STAGE LLC,

     Defendants.

_____

Submitted May 20, 2020 – Decided June 9, 2020

Before Judges Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0834-18.

Genova Burns LLC, attorneys for appellant (Michael C. McQueeny, of counsel and on the briefs).

Benesch Friedlander Coplan & Aronoff, attorneys for respondents Live2U LLC and Surinder Palsingh Kalra (Kevin M. Capuzzi, of counsel and on the brief).

PER CURIAM

Plaintiff Princeton Royal Events, LLC (PRE) appeals from a June 27, 2019 order dismissing its complaint and compelling arbitration. We affirm.

This matter arises from a contract PRE and defendant Live2U LLC signed. PRE hoped to host Pritam Chakraborty, a world renown Indian composer, for a concert in Trenton. Defendant Surinder Palsingh Kalra operated Live2U, which served as Pritam's[1] regional agent. In preparation for Pritam's arrival in the United States and the concert, PRE expended substantial sums of money on a performance fee, advertising, arranging the venue, media, travel, and securing accommodations suitable for Pritam and his entourage as requested by his agents

_____

[1] Pritam is commonly known by just his first name. Pritam, Wikipedia (May 15, 2020, 11:23 AM), https://en.wikipedia.org/wiki/Pritam. We intend no disrespect by referring to him accordingly.

A-5370-18T3

and his North American tour director. However, for reasons the parties dispute, Pritam arrived at his hotel in New York City, but refused to travel to the concert venue, and the concert did not occur.

PRE filed a complaint alleging unjust enrichment, promissory estoppel, tortious interference with contract, breach of contract, and breach of the covenant of good faith and fair dealing naming several defendants. Relevant to the issues raised on this appeal, the complaint named Pritam, Live2U, Kalra, Pritam's talent agency and manager who arranged his North American tour, and the company in charge of Pritam's North American tour and its director. The complaint also named a pain physician, his business entity, and his wife, alleging they collectively interfered with and adversely influenced PRE's relationship with Live2U and production of the concert.

Live2U and Kalra moved for dismissal of the complaint pursuant to Rule 4:6-2(a) and (e) arguing the complaint failed to allege a cause of action against Kalra individually and that the parties contracted for arbitration. The motion judge granted the motion and made the following findings:

> [Live2U] and [PRE] negotiated a contract which . . . provides in section 8, in a section entitled "Disputes/jurisdiction", "All or any disputes or differences arising out of or pertaining to this contract shall be first attempted to be resolved by both parties

through good-faith negotiations and by mutual understanding." That's paragraph (a).

Paragraph (b): "Any dispute between the parties which is not resolved by good-faith negotiations . . . within ten days of being raised by the aggrieved party, shall be finally resolved by arbitration in accordance with the provisions . . . of the Arbitration and Conciliation Act of Illinois." In parenthesis it says "as amended from time to time, 'The Arbitration Act'."

Paragraph (c): "The arbitration proceedings shall be conducted in English and the place of arbitration will be County of Cook, State of Illinois."

. . . .

Paragraph (d) provides: "Any controversy or claims arising out of or relating to this agreement or a breach thereof, shall be settled by jurisdiction of the court of law in County of Cook, State of Illinois, USA. The organizer and the national promoter submit to the jurisdiction of the courts of the State of Illinois for the enforcement of the agreement or any decision arising from this agreement. This agreement will be enforced or . . . construed according to the laws of the State of Illinois."

The [c]ourt also would note that representatives of both parties initialed below this agreement . . . .

The judge concluded as follows:

In this case, plaintiff's arguments that the arbitration clause is unenforceable because it does not properly identify which rights are being waived, is

4

without merit. Plaintiff cites specifically to <u>Atalese</u>[2] in support for their position.

. . . <u>Atalese</u> . . . was in the context of a consumer contract between an average consumer and a business or commercial entity. <u>Atalese</u> does not and is not dispositive of the issue before the [c]ourt here.

The [c]ourt's findings of fact is that . . . in reviewing the contract between [Live2U] and [PRE], it is clear that the parties entered . . . into this agreement . . . with the intent to specifically address and to provide for arbitration as a means of addressing disputes and/or claims.

The [c]ourt finds that section 8 contains all the relevant arbitration language. The [c]ourt finds that there is . . . nothing to suggest that the parties did not know what they were doing at the time.

In addition to the parties agreeing to the arbitration provision, the parties specifically referenced and provided that . . . the provisions of Arbitration and Conciliation Act of Illinois would apply. And the parties went so far as to indicate in parenthesis "as amended from time to time".

Therefore, plaintiff's argument that there is not a specific statute termed or named specifically Arbitration and Conciliation Act of Illinois, is also without merit.

The [c]ourt finds that the parties in . . . drafting this provision in the way that they did, clearly identified the law that they wanted to apply, [regardless] of the exact or the specific name that is noted herein.

---

[2] <u>Atalese v. U.S. Legal Servs. Group, L.P.</u>, 219 N.J. 430 (2014).

Here, . . . unlike . . . in <u>Atalese</u>, there was no disparity in the bargaining power . . . . Both parties in this case are commercial entities that entered into a contract. And there is nothing to suggest that the language is ambiguous or that it should not be enforced or that the parties did not mutually assent to exactly what is noted here.

. . . .

The [c]ourt also considered . . . plaintiff's argument with respect to the impact that a dismissal here and return to arbitration would have on the overall case, this being a multi-party suit.

The [c]ourt reviewed the case again of [<u>EPIX Holdings Corp. v. Marsh & McLennan, Cos. Inc.</u>, 410 N.J. Super. 453, 480 (App. Div. 2009).]

Of significance here is the language . . . which provides that New Jersey courts have routinely permitted litigation in separate forums where a plaintiff alleges claims against multiple defendants, some of whom have agreed to arbitrate their disputes and others have not, even where common questions of law and fact create significant overlap. . . .

. . . [T]he [c]ourt finds that irrespective of the fact that there may be a situation where part of this case is litigated in Illinois and parts of this case is litigated in New Jersey, the public policy of the State of New Jersey is to allow arbitration to proceed where arbitration has been mutually assented to by the parties.

. . . [T]he inconvenience to the parties is an insufficient basis to compel a decision that would overrule arbitration, when that was, in fact, what was contemplated by the parties.

6

Our law strongly prefers the enforcement of arbitration agreements because "arbitration is [the] favored method of resolving disputes." See Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 131 (2001); see also Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006). Our review of the validity of an arbitration agreement and the legal determinations made by the trial court is de novo. Morgan v. Sanford Brown Inst., 225 N.J. 289, 302-03 (2016); see also Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

On appeal, PRE re-asserts the arguments made to the motion judge, namely, that there was no meeting of the minds regarding arbitration because the arbitration clause was ambiguous; neither the arbitration forum, nor the procedures were identified; and because it asserted claims against defendants who did not sign the contract, it is prejudiced by having to arbitrate its claims against Live2U[3] and also litigate the matter in court against the other defendants.

Pursuant to our de novo review, we find PRE's arguments unpersuasive and affirm substantially for the reasons the motion judge expressed. The terms of the arbitration were clear and unambiguous, having defined the venue, forum,

---

[3] PRE has not appealed from the dismissal of its claims against Kalra individually.

the applicable law for arbitration, and left no uncertainty that it applied to any dispute "arising out of or related to" the contract between PRE and Live2U. Moreover, the agreement vested jurisdiction in the Illinois courts relating to "[a]ny controversy or claims arising out of or relating to [the] agreement or a breach thereof."

Finally, we reject PRE's argument that its claims against the defendants who did not execute the contract somehow thwarted the clear and unambiguous agreement to arbitrate the claims between PRE and Live2U. Preliminarily, we note the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-14, applies to "a contract evidencing a transaction involving commerce to settle by way of arbitration a controversy thereafter arising out of such contract . . . ." 9 U.S.C. § 2. The motion judge cited our decision in EPIX Holdings Corp. where we held that "[u]nder the FAA, 'an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.'" 410 N.J. Super. at 479 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 (1983)).

Here, the parties were sophisticated and in the business of producing live shows featuring international talent. With so many other actors and entities involved in bringing Pritam's concert to fruition, the parties had the wherewithal

to negotiate a contract which encompassed the possible claims against others who were involved in producing the show, or barring such an agreement, could have declined to sign the contract altogether. They did not. For these reasons, we decline to ignore the parties' clearly worded agreement to arbitrate their dispute.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-5370-18T3