**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2851-24

SHIP TO SHORE
COUNSELING, P.C.,

    Plaintiff-Appellant,

v.

NEURONETICS, INC. and
MARIO LEONE,

    Defendants-Respondents.

_____

Submitted December 10, 2025 – Decided February 20, 2026

Before Judges Currier and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0209-23.

Kelly Law, PC, attorneys for appellant (Charles P. Kelly IV, of counsel; Bradley Latino, of counsel and on the briefs).

Greenberg Traurig, LLP, attorneys for respondents (Aaron Van Nostrand and Clarissa Gomez, on the brief).

PER CURIAM

Before us for a second time, and after limited discovery, we consider whether plaintiff's claims, including an asserted violation of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-2 to -33, should proceed under the arbitration provision contained in the commercial contract entered into between these parties. As it did in the first appeal, plaintiff asserts it is not a sophisticated entity and, therefore, could not have voluntarily assented to the waiver of its right to a jury trial.

After remand and limited discovery on the narrow issue, we agree with the trial court that the arbitration provision is enforceable as plaintiff's principal, who was involved in this commercial transaction, was highly educated, and possessed the business acumen to understand the arbitration clause contained in this contract and to assent to its terms. We affirm the court's order compelling plaintiff to proceed to arbitration against defendants.

Plaintiff is a mental health services practice started in 2017 by Christine Possemato and a prior business partner. Possemato had previously established CRP Behavioral Health (CRPBH) several years earlier. Possemato described plaintiff and CRPBH as "essentially a single business." She stated that "[a]t its largest, CRPBH employed three psychiatric nurse practitioners, three office staffers, and a clinical director."

A-2851-24

Defendant Neuronetics is a medical technology company which "develops non-invasive treatments for psychiatric disorders resistant to traditional drug therapies."  This includes the marketing and sale of

> the NeuroStar® Advanced Therapy System, a form of transcranial magnetic stimulation ("TMS") which is used to treat major depressive disorder in adults without surgery or medication.  TMS is delivered via a chair ("NeuroStar Chair") that uses highly focused MRI strength magnetic pulses, administered to a patient through the placement of a coil which stimulates nerve cells in the brain.

Defendant Mario Leone was a sales representative for Neuronetics who was involved in the sale of the NeuroStar Chair to plaintiff in March 2022.

To achieve the purchase, plaintiff entered into a Master Sales Agreement (Agreement) with Neuronetics.  The Agreement was signed by plaintiff's employee, Steven Padula, a psychiatric nurse practitioner.  Padula certified "[he] corresponded with Neuronetics' sales representative by email. . . . Possemato was present for all or most teleconferences with Neuronetics."

The Agreement incorporated the NeuroStar® Advanced Therapy for Mental Health Standard Terms and Conditions of Sale (Terms and Conditions).  In marking an "x" through the box on the Agreement, Padula "expressly acknowledge[d] receipt of access to the Terms and Conditions . . . that [he] ha[d]

read and understood the Terms and Conditions of Sale and agreed to be bound by them prior to signing below."

The Terms and Conditions contain a dispute resolution clause which states, in relevant part, that

> [a]ny case, controversy or claim arising out of or relating to this Agreement, including its breach and/or interpretation, shall be <u>exclusively resolved</u> (i) first by non-binding mediation for at least one day and no more than two days in Chester County, Pennsylvania before a mutually agreed mediator and (ii) if the case, controversy or claim is not resolved by such mediation, then binding arbitration to occur in Chester County, Pennsylvania under the auspices of the American Arbitration Association under its then-current Commercial Arbitration Rules . . . .
>
> [(Emphasis added).]

After plaintiff filed its complaint alleging violations of the CFA, common law fraud, and unjust enrichment, defendants moved to compel arbitration and stay the proceedings. The trial court denied the motion. The trial court found that "although the parties voluntarily entered into this agreement[,] plaintiff was not a sophisticated consumer and therefore the . . . lack of waiver makes the arbitration clause invalid [in] these circumstances . . . ."

On appeal, we reversed, stating that although "[t]he trial court acknowledged the commercial context [here]" it nevertheless determined "that

4

the heightened waiver standards articulated under [Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430, 442-45 (2014), and Garfinkel v. Morristown Obstetrics & Gynecology Associates, P.A., 168 N.J. 124, 134-36 (2001)] were applicable" because "plaintiff was not a sophisticated party and was not represented by counsel when it entered the contract." We further found

> there was no evidence in the meager record to support [the trial court's] findings. The record before the trial [court] consisted only of a complaint—in which plaintiff alleged it negotiated the sale of the product with defendants, the Master Sales Agreement, and the Terms and Conditions of Sale. Plaintiff did not submit a certification regarding its principals' business experience, the extent of the negotiations, or any other information which could permit the court to determine plaintiff's level of business sophistication or acumen, whether it was represented by counsel, or the parties' bargaining power.

We concluded that

> the record is not sufficient to determine the threshold issue of whether plaintiff assented to the arbitration clause. Therefore, under these circumstances we are constrained to reverse the order denying the motion to compel arbitration and remand for the parties to conduct limited discovery narrowed to the issue of whether there was assent to the waiver of litigation in a court of law.

On remand, after motion practice, plaintiff eventually produced certifications from Possemato and Padula but objected to producing the

individuals for depositions. In her certification, Possemato described her academic credentials, including a bachelor's degree in nursing and a master's degree in business administration in pharmaceutical operations earned in 2004. She holds nursing and advanced practice nursing licenses and received a certificate in Health Policy and Media Engagement.

Possemato has held various positions over the last two decades, including jobs with major healthcare companies such as Johnson & Johnson, Schering Plough, Novartis, and Sanofi-Aventis. Possemato stated she had never held a job that required her to negotiate contracts. Nevertheless, in the course of her ownership of two businesses, Possemato certified that plaintiff entered into other contracts in 2021 and 2022, prior to the execution of the Agreement. She stated that "[o]ne contract contain[ed] an arbitration provision, [and] the other d[id] not." She further noted that "[n]either of these contracts w[ere] negotiated."

Discovery also revealed that Padula included his father in conversations with defendants. The record included background information that Steven Padula Sr. has served as a facility/project manager for several prominent companies for the last twenty years and has extensive experience in negotiating and implementing vendor and contractor contracts.

A-2851-24

Thereafter, defendants renewed their motion to compel arbitration. Plaintiff opposed the motion, contending that although Possemato was sophisticated, intelligent and highly educated, that was not sufficient to enforce the arbitration provision against plaintiff because Possemato did not possess legal sophistication.

In its oral decision granting the motion, the trial court stated:

> I was surprised to read the level of education and business experience, et cetera that your clients set forth in their resumes. But my concern here is the argument that you're raising in your papers that . . . they're educated and have all this background but they don't have sophistication in legal matters. And what I don't see in your brief, sir, is anything that says in a commercial context that sophisticated, intelligent people, highly educated are required to have counsel to enter into a contract or that they have to be trained, you know with a law degree, . . . and understand the concept of arbitration as a precondition to entering into any type of commercial contract. And I cannot find a case that says that.

The court found that

> upon review of the certifications with the resumes provided by Possemato and Padula these are highly educated, sophisticated people. The [c]ourt notes at the outset this is a commercial transaction and they're business owners and they entered into an agreement to acquire a medical device and then they have a dispute regarding the medical device. And now . . . these business owners . . . want to say that we have no idea what the legal term arbitrate means.

7

Plaintiff does not cite any law to support a proposition being advanced that yes, people can have an MBA[] and various degrees and teach and be trained, you know psychiatric nurses but they don't have sophistication to enter into a binding contract notwithstanding that they're business owners unless they're trained in the law and they understand the legal terms such as arbitrate.

. . . .

[T]he law is replete and very well established in New Jersey that the [c]ourt must resolve all doubts related to scope of arbitration in favor [of] arbitration when possible and arbitration . . . agreements should be read liberally to find arbitrability whenever reasonably possible.

I unequivocally find based on these facts and circumstances based on the level of sophistication of these two principals entering into this commercial contract that there was assent to this contract.

On appeal, plaintiff contends (1) the trial court erred in finding that the sophisticated parties' exception to Atalese applies; and (2) its CFA claim is beyond the scope of the arbitration provision.

Our review of a trial court's order granting or denying a motion to compel arbitration is de novo because the validity of an arbitration agreement presents a question of law. Santana v. SmileDirectClub, LLC, 475 N.J. Super. 279, 285 (App. Div. 2023) (citing Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020)). We similarly review determinations about the enforceability of arbitration

agreements de novo. Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013).

Plaintiff contends this court created a "sophisticated party" exception in County of Passaic v. Horizon Healthcare Services, Inc., 474 N.J. Super. 498, 503 (App. Div. 2023), which permits the enforcement of an arbitration clause that might not satisfy the Atalese standard "if the court finds the parties to be sufficiently sophisticated to have known the rights they were waiving, contract language notwithstanding."

In County of Passaic, the plaintiff contracted with the defendant to manage the County's self-funded health benefit plan. 474 N.J. Super. at 501. After the County sued the defendant for breach of contract, the defendant moved to compel arbitration under the parties' written agreement. Ibid. The trial court granted the motion and the County appealed, asserting the arbitration provision was unenforceable because it did not include the explicit waiver of access to the courts as required under Atalese. Ibid.

In affirming the order compelling arbitration, we stated:

> [Atalese's] concern for those not versed in the law or not necessarily aware of the fact that an agreement to arbitrate may preclude the right to sue in a court . . . vanishes when considering individually-negotiated contracts between sophisticated parties—often represented by counsel at the formation stage—

possessing relatively similar bargaining power. . . . [A]n express waiver of the right to seek relief in a court of law to the degree required by Atalese is unnecessary when parties to a commercial contract are sophisticated and possess comparatively equal bargaining power.

[Id. at 503-504.]

Plaintiff urges this court to further narrow the concept articulated in County of Passaic and conclude that "not just any kind of 'sophistication' will suffice. Rather, the movant has the burden of showing sophistication that allays Atalese's 'concern for those not versed in the law' or not 'aware . . . that an agreement to arbitrate may preclude the right to sue in court.'" We decline the invitation.

Neither County of Passaic nor any other precedent requires a party opposing the application of an arbitration provision to possess "legal sophistication." As we stated in our first opinion, the trial court needed more than the scant pleading before it to assess and determine the level of the parties' business sophistication and comparative bargaining power.

The ensuing discovery revealed plaintiff's principal—Possemato— possesses extensive academic credentials including an MBA, she founded her own business more than a decade ago and remained the owner and principal of two companies. Possemato has entered into other contracts, including at least

10

one which contained an arbitration provision. Possemato has consulted with and used business professionals, including lawyers, in various aspects of her business. Possemato was involved with the purchase of the NeuroStar Chair. Possemato has not certified she was prevented from negotiating the terms of the contract including the arbitration provision or that it was a contract of adhesion.

Plaintiff did not involve counsel in the formation of this contract. However, that alone is not sufficient to make a determination and, given the facts presented here, does not establish a lack of assent to the Agreement's Terms and Conditions. Plaintiff's principal was a sophisticated party with comparative equal bargaining power and business acumen to understand the plain language of the provision which required any case or controversy regarding the Neurostar Chair to be "exclusively resolved" through non-binding mediation and binding arbitration.

As the Atalese Court stated, "[n]o particular form of words is necessary to accomplish a clear and unambiguous waiver of rights. . . . Arbitration clauses—and other contractual clauses—will pass muster when phrased in plain language that is understandable to the reasonable consumer." Atalese, 219 N.J. at 444. Plaintiff's principal was well equipped, through her education and business experience, to understand the words of the arbitration provision in the

11

Terms and Conditions of the Agreement and be notified that mediation and/or arbitration would be the exclusive means of resolving any case, controversy or claim arising out of the Agreement.

For similar reasons, we reject plaintiff's argument that it was unaware its statutory CFA claim was required to proceed in mediation and binding arbitration. As stated, the arbitration clause stated "[a]ny case, controversy or claim arising out of or relating to this Agreement, including its breach and/or interpretation, shall be exclusively resolved . . ." in mediation and binding arbitration in Chester County Pennsylvania under the Commercial Arbitration Rules of the American Arbitration Association. Given Possemato's described intellect and business experience, we are satisfied plaintiff was notified of the procedure for all claims regarding the Agreement.

Lastly, for the first time, plaintiff contends Mario Leone was not subject to the arbitration provision because he was not a signatory to the Agreement, and, therefore, plaintiff did not waive its right to proceed with a CFA claim against him in court.

We generally do not consider allegations of error not raised before the trial court. See US Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 483 (2012) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). However,

12

we can make short shrift of this argument. Leone was an employee and agent of Neuronetics at the time of the parties' transaction and acted in that capacity in his dealings with plaintiff. As the Terms and Conditions required plaintiff to resolve any claims arising out of the Agreement through mediation, then arbitration, Leone would be subsumed into that obligation as Neuronetics' agent. The claims against him individually arise out of the Agreement.

We are satisfied the arbitration agreement here included Leone given that the causes of action arose from plaintiffs' dealings with Neuronetics. To hold otherwise, under the facts presented here, would allow plaintiff to circumvent the agreement by naming non-signatory parties or even signatory parties in their individual capacity. The language of the arbitration agreement makes clear the parties' intent was to arbitrate all disputes arising from plaintiff's dealings with Neuronetics, and the contract therefore extended to Leone. The court did not err in granting the motion to compel arbitration and dismissing the complaint as to all defendants.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2851-24