**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0628-21

RAVIN BHOJ,

     Plaintiff-Appellant,

v.

OTG MANAGEMENT, LLC
and PEG OERTER,

     Defendants-Respondents.

_____

Submitted March 2, 2022 – Decided July 18, 2022

Before Judges Gilson and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2073-21.

Castronovo & McKinney, LLC, attorneys for appellant (Paul Castronovo and Edward W. Schroll, of counsel and on the briefs).

Cozen O'Connor, PC, attorneys for respondents (Michael C. Schmidt, of the New York bar, admitted pro hac vice; Jason A. Cabrera and Janice Sued Agresti, on the brief).

PER CURIAM

Defendants OTG Management, LLC (OTG) and Peg Oerter, OTG's Regional Director of Human Resources (HR), hired plaintiff Ravin Bhoj to be OTG's HR Director at Newark Liberty International Airport. Bhoj was employed by OTG from October 5, 2020, to February 3, 2021, when he was terminated. After Bhoj was terminated, he filed a complaint on March 16, 2021, alleging defendants had violated the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, by wrongfully terminating him after he confronted Oerter about OTG's unlawful payroll practices.

On defendants' motion, the trial court dismissed Bhoj's complaint with prejudice and compelled his claim to arbitration in an order entered on October 22, 2021. Bhoj now appeals the October 22 order, raising the following arguments for our consideration:

POINT I

PLAINTIFF DID NOT WAIVE HIS STATUTORY RIGHT TO A JURY TRIAL BECAUSE DEFENDANTS NEVER GAVE HIM THE ARBITRATION AGREEMENT.

A. Arbitration Agreements Require Mutual Assent Like Any Other Contract.

B. Plaintiff Never Assented To Arbitrate His CEPA Claim Because Defendants Never Provided The Arbitration Agreement.

2

<u>POINT II</u>

THE MOTION COURT ERRED IN DECIDING DISPUTED QUESTIONS OF FACT.

Because there are disputed facts as to whether plaintiff assented to arbitrate his CEPA claim, we vacate the order and remand for a plenary hearing.

I.

We glean these facts from the motion record. On September 11, 2020, Oerter emailed an offer letter along with other documents to Bhoj for him to review and consider. At the close of her email, Oerter added, "If everything is agreeable, please sign and date the documents and return to me."

In addition to providing salary and benefits information, the offer letter included the following notice:

> Additionally, <u>you will be required to sign</u> an Agreement Regarding Post-Employment Competition and <u>Mutual Agreement to Arbitrate</u>, <u>copies of which are attached this letter</u> [sic]. You agree that employment with us and the benefits of that employment are sufficient consideration for the Agreement Regarding Post-Employment Competition and <u>Mutual Agreement to Arbitrate</u> which you should carefully review and consider.
>
> [(emphases added).]

A-0628-21

The following day, September 12, 2020, Bhoj accepted the offer and signed and returned all the documents he received. On October 5, 2020, Bhoj attended OTG's onboarding training as directed by Oerter. The training schedule included a thirty-minute block for employees to complete HR paperwork in Dayforce, OTG's electronic onboarding program.

After Bhoj filed his CEPA complaint, defendants moved to dismiss the complaint and compel arbitration, despite admitting that the Mutual Agreement to Arbitrate was not included among the attachments to the offer letter. Also, notably, the Agreement Regarding Post-Employment Competition (Noncompete Agreement), which was attached to the offer letter, included an arbitration clause regarding post-employment competition disputes.

However, to support their motion to compel arbitration, defendants submitted an unsigned copy of an Arbitration Agreement titled "Mutual Agreement to Arbitrate Claims." In a certification, Oerter averred that the "Mutual Agreement to Arbitrate" was among the documents uploaded to Dayforce for Bhoj to review during the onboarding training. Attached to the certification was "[a] screenshot showing the documents" Oerter asserted Bhoj "would have seen when he logged in to Dayforce." The screenshot listed two Arbitration Agreements – "Mutual Agreement to Arbitrate (non-union)" and

4

"Mutual Agreement to Arbitrate (union)."[1]  Oerter certified that although the Arbitration Agreement defendants submitted was unsigned, Bhoj "signed every other document that was provided to him through Dayforce."

The Arbitration Agreement relied on by defendants provided in pertinent part:

> In recognition of the fact that differences may arise between the undersigned ("Employee") and OTG . . . and [its] respective officers, employees, directors, agents, and representatives (collectively, "Employer") arising out of or in connection with Employee's employment with Employer or the termination of that employment, and in recognition of the fact that the resolution of differences in the courts is rarely timely or cost-effective for either Party, Employer and Employee (collectively, the "Parties") have entered into this Mutual Agreement to Arbitrate Claims ("Agreement") in order to establish and gain the benefits of a speedy, impartial, and cost-effective dispute resolution procedure.
>
> This Agreement is deemed to be a written agreement to arbitrate pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16. . . . Employee hereby acknowledges that he/she has read and understands the implications of this Agreement.
>
> 1. EMPLOYMENT AT-WILL:  Employee is employed on an at-will basis.  The Parties mutually agree that this Agreement does not contain or constitute a guarantee of employment for any specific period.  This means that Employee may resign his/her employment at any time

---

[1]  A Spanish version of the Arbitration Agreement was also listed.

and that Employer may terminate Employee's employment at any time.

2. CONSIDERATION:  Employee acknowledges that his/her execution of this Agreement is a condition of his/her employment or continued employment with Employer.  Employee also acknowledges that his/her employment or continued employment constitutes the consideration for Employee's agreement to the terms of this Agreement, and that such consideration is adequate. . . .

3. CLAIMS:  The Parties mutually agree that, except as provided below, the dispute resolution procedure set forth in this Agreement applies to any and all claims, grievances, and/or causes of action (whether based in contract, tort, statute, regulation or otherwise), arising out of or in connection with Employee's employment relationship with Employer, the terms and conditions of employment, the termination of employment or any post-employment obligations of the Parties, including, but not limited to, all claims arising under federal, state or local laws and regulations . . . , and any common law claims recognized now or later (hereinafter referred to as "Claims").

EMPLOYEE AND EMPLOYER HEREBY WAIVE THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY, IN ORDER TO RESOLVE CLAIMS. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT AND OTHER RIGHTS THAT EMPLOYEE AND EMPLOYER WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

    . . . .

6

A-0628-21

4. SUBMISSION OF CLAIMS TO ARBITRATION: The Parties hereby agree to attempt, in good faith, to resolve any and all Claims promptly by utilizing the procedures outlined in any employee handbook/manual . . . . If a resolution acceptable to both Employer and Employee does not result from the foregoing, the Claim shall be submitted to and determined exclusively by binding arbitration in accordance with the Comprehensive Arbitration Rules and Procedures of JAMS (or any successor of that organization in effect at the time the arbitration is initiated) . . . . The duty to arbitrate Claims under this Agreement survives any termination of Employee's employment with Employer.

> . . . .

6. NO CLASS ACTIONS. Employee and Employer expressly understand and acknowledge that by signing this Agreement they are waiving their rights to trial by jury and their rights to pursue class action, collective action, multiple-party, and private attorney general remedies in any court and in any arbitration forum, except as expressly provided herein.

[(emphases added).]

Other than signing, the Arbitration Agreement did not provide a means for an employee to express assent.[2]

Bhoj opposed the motion to compel arbitration and certified that he "never [saw] . . . nor . . . signed" the Arbitration Agreement during onboarding.

---

[2] See Restatement (Second) of Contracts § 60 (Am. Law Inst. 1981) (providing that "[i]f an offer prescribes the place, time or manner of acceptance[,] its terms in this respect must be complied with in order to create a contract").

Bhoj also averred that he "did not realize that the Arbitration Agreement was a separate document from the Noncompete Agreement" because "the Noncompete Agreement include[d] an arbitration provision, and the Noncompete Agreement was all that [defendants] . . . provided" to him. Bhoj certified that he "never knew" and was never informed "there was a separate Arbitration Agreement from the Noncompete Agreement" and that "[he] never agreed to the Arbitration Agreement" relied on by defendants. Rather, "[his] understanding was that the arbitration provision of the Noncompete Agreement was the scope of [his] agreement to arbitrate matters with OTG" and that the agreement to arbitrate was "limited to claims pertaining to the Noncompete Agreement itself."

Nonetheless, in an October 22, 2021 order, the judge granted defendants' motion and dismissed the complaint "with prejudice." The judge cited the principle articulated in Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430 (2014), where the Court noted that an enforceable arbitration agreement requires "'the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" Id. at 442-43 (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 425 (App. Div. 2011)).

The judge determined:

A-0628-21

This standard was satisfied by the [d]efendant[s'] employment hiring and onboarding process wherein [Bhoj] had notice and agreed to and/or completed all forms of employment and provision of information.

[Bhoj] was also provided with the Arbitration [A]greement via Dayforce and was instructed during orientation to review all the materials provided in Dayforce before signing. Even without a signature, [Bhoj] was provided the Arbitration Agreement at the beginning of his employment and his continuation of employment after receiving the Arbitration Agreement implied his assent to the agreement.

This appeal followed.

## II.

The enforceability of an arbitration agreement is a question of law, which we review de novo. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020). "Similarly, the issue of whether parties have agreed to arbitrate is a question of law that is reviewed de novo." Jaworski v. Ernst & Young U.S. LLP., 441 N.J. Super. 464, 472 (App. Div. 2015). Thus, we exercise de novo review of a trial court's order compelling arbitration, Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019), and "[i]n reviewing such orders, we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level," Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). That preference, "however,

is not without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001).

Arbitration agreements are subject to customary contract law principles. Atalese, 219 N.J. at 442 (2014). Under our State's defined contract-law principles, a valid and enforceable agreement requires: (1) consideration; (2) a meeting of the minds; and (3) unambiguous assent. Id. at 442-45. Because arbitration provisions involve the waiver of rights, "the waiver 'must be clearly and unmistakably established.'" Id. at 444 (quoting Garfinkel, 168 N.J. at 132). Therefore, in employment settings, "a valid waiver results only from an explicit, affirmative agreement that unmistakably reflects the employee's assent." Leodori v. CIGNA Corp., 175 N.J. 293, 303 (2003).

Unmistakable assent is demonstrated by "'some concrete manifestation of the employee's intent as reflected in the text of the agreement itself.'" Id. at 300 (quoting Garfinkel, 168 N.J. at 135). Thus, "[w]hen one party . . . presents a contract for signature to another party, the omission of that other party's signature is a significant factor in determining whether the two parties mutually have reached an agreement." Id. at 305.

In Leodori, our Supreme Court determined an arbitration provision was unenforceable because the plaintiff had not signed a specific form designated to

10

effect employee assent to arbitration. Id. at 308. The arbitration clause was embedded in an employee handbook, and the employer distributed two forms for employees to sign, one acknowledging receipt of the handbook and the other confirming agreement to arbitration terms. Id. at 297-98. The plaintiff signed the former, not the latter. Ibid.

The Court held the arbitration provision was unenforceable against the plaintiff, reasoning that "[w]ithout [the] plaintiff's signature on the [a]greement . . . we cannot enforce the arbitration provision unless we find some other explicit indication that the employee intended to abide by that provision." Id. at 305. "Finding no such proof," the Court "h[e]ld for plaintiff." Id. at 307. The Court reached its decision despite acknowledging that the "plaintiff knew of the company's arbitration policy." Id. at 306.

More recent cases provide examples of when assent to an arbitration agreement is ascertainable without an employee's signature. In Skuse, the Court determined an arbitration agreement was enforceable regardless of whether the plaintiff had signed it because the document expressly stated that continued employment beyond a specific period would constitute assent. 244 N.J. at 36-38.

The contract in Skuse read:

You understand that your acknowledgement of this [a]greement is not required for the [a]greement to be enforced. If you begin or continue working for the Company sixty (60) days after receipt of this [a]greement, even without acknowledging this [a]greement, this [a]greement will be effective, and you will be deemed to have consented to, ratified and accepted this [a]greement through your acceptance of and/or continued employment with the Company.

[Id. at 39 (emphases added).]

Because it was undisputed that the plaintiff had received the agreement and continued working for thirteen months afterward, the Court held plaintiff had assented to the arbitration provisions. Id. at 36, 60. The Court also noted that the plaintiff had viewed the arbitration agreement through a computer-based training module and clicked an acknowledgment icon that immediately followed language in the agreement that "used several other terms that denote assent." Id. at 61.

In enforcing the arbitration agreement, the Court explained:

In sum, Pfizer's Agreement explained to Skuse in clear and unmistakable terms the rights that she would forego if she assented to arbitration by remaining employed at Pfizer for sixty days. Although Pfizer's "training module" was not an optimal method of conveying to Skuse her employer's arbitration policy, Pfizer's May 5 and 6 e-mails, the link to the Agreement contained in those e-mails, the "FAQs" page, and the summaries that appeared on the four pages collectively explained, with the clarity that our law requires, the terms of the

12

> Agreement to which Skuse agreed by virtue of her continued employment.
>
> [Ibid.]

Likewise, in Jaworski, we enforced an arbitration agreement against a plaintiff who received but did not sign the agreement, which provided continued employment beyond a specific date constituted assent. 441 N.J. Super. at 474. Specifically, the agreement read: "An Employee indicates his or her agreement to the [arbitration program] and is bound by its terms and conditions by beginning or continuing employment with [the company] after July 18, 2007 (the 'Effective Date')." Ibid. We reasoned the plaintiff's continued employment beyond the agreement's effective date "manifest[ed] his intent to be bound pursuant to the unambiguous and specifically-emphasized terms of the [arbitration program]." Ibid.

The Skuse Court distinguished Leodori. In Skuse, the Court underscored that "[n]o form intended to confirm the employee's assent was left unsigned," and "the prescribed form of assent . . . was the employee's decision to remain employed after the effective date." 244 N.J. at 59. Similarly, in Jaworski, we distinguished Leodori by emphasizing how in Leodori, the company's "own documents contemplated [the employee]'s signature as a concrete manifestation

of his assent." 441 N.J. Super. at 474 (alteration in original) (quoting Leodori, 175 N.J. at 306).

If a case involves "questions of fact concerning the mutuality of assent to the arbitration provision," we may remand the matter for the trial court to resolve those issues. Knight v. Vivint Solar Dev., LLC, 465 N.J. Super. 416, 427-28 (App. Div. 2020), certif. denied, 246 N.J. 222 (2021), and certif. denied, 246 N.J. 223 (2021). In Knight, where the plaintiff asserted she never saw or signed the purported arbitration agreement and claimed the agreement presented in court had "a forged signature," we vacated an order compelling arbitration and remanded "for a plenary hearing," given the parties' conflicting accounts. Id. at 419, 423. We acknowledged that formation of an arbitration agreement is an issue "to be decided by the trial court" and "conclude[d] there exist[ed] questions of fact concerning the mutuality of assent to the arbitration provision, which [was] necessary to bind both parties to arbitration." Id. at 426-27.

Here, Bhoj stresses there was no "meeting of the minds" or "mutual assent" because defendants failed to attach the Arbitration Agreement to his offer letter, and he never saw the document during onboarding or prior to the litigation. Furthermore, Bhoj contends it was reasonable for him to believe the Arbitration Agreement and Noncompete Agreement were one document because

14

the Noncompete Agreement contained an arbitration clause. He contends the record does not support the judge's finding that defendants provided the Arbitration Agreement during onboarding, particularly in light of his conflicting certification which the judge ignored and defendants' submission of an unsigned Arbitration Agreement.

As in Knight, we conclude "there exist questions of fact concerning the mutuality of assent to the arbitration provision." Id. at 427. Defendants admit the Arbitration Agreement was not attached to the offer letter. Further, the record lacks any affirmative indication that Bhoj assented to the Arbitration Agreement during onboarding, given his certification that he did not see the document and Oerter's certification that Bhoj signed "every other document" provided through Dayforce.

Moreover, the Arbitration Agreement lacked express language declaring that continued employment beyond a specific date would effectuate assent, noting instead that "execution of th[e] Agreement is a condition of his/her employment" and "continued employment constitutes the consideration for Employee's agreement to the terms of this Agreement." Thus, even if Bhoj had reviewed the Arbitration Agreement during onboarding, because these provisions do not unambiguously state that continued employment beyond a

15

certain period would constitute assent, he cannot be deemed to have assented through continued employment alone. See Skuse, 244 N.J. at 51 (noting that employers must "inform[] employees, with the clarity that our waiver-of-rights law requires, that continued employment after the policy's effective date would constitute acceptance of the [a]greement's terms").

Given the conflicting certifications, we are unable to determine how the judge could ascertain without an evidentiary hearing whether plaintiff assented to the Arbitration Agreement. A motion judge should not resolve disputes based solely on competing certifications. See Palmieri v. Palmieri, 388 N.J. Super. 562, 564 (App. Div. 2006). "When a genuine issue of material fact exists, a plenary hearing is required." Ibid.; see also Bruno v. Gale, Wentworth & Dillon Realty, 371 N.J. Super. 69, 76-77 (App. Div. 2004) (reversing and remanding for a plenary hearing where the trial judge reached a "decision based on certifications containing conflicting factual assertions").

Ordinarily, we apply a deferential standard in reviewing factual findings by a judge. Balducci v. Cige, 240 N.J. 574, 594 (2020). However, because the motion judge made no credibility determinations and rendered her decision based upon conflicting certifications, the judge's findings lacked the required evidentiary support to grant defendants' motion. We therefore remand for the

16

judge to conduct a plenary hearing to resolve the disputed factual issues pertaining to plaintiff's receipt of and assent to the Arbitration Agreement.

While we offer no view on the outcome of the remand proceedings, we note that if the judge enters another order compelling arbitration, the complaint should not be dismissed with prejudice. Rather, the matter should be stayed pending the arbitration. See 9 U.S.C. § 3 (stating a court action should be stayed if the action involves "any issue referable to arbitration").

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-0628-21