**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3303-24

JULIA WILLIAMSON,

     Plaintiff-Respondent,

v.

ALERISLIFE, INC., LEISURE
PARK AT LAKEWOOD, INC.,
d/b/a FIVE STAR SENIOR
LIVING, ANTHONY MAAS and
CYNTHIA PRATO,

     Defendants-Appellants.

_____

Submitted January 22, 2026 – Decided May 11, 2026

Before Judges Currier and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1877-24.

Jackson Lewis, PC, attorneys for appellants (Ronald V. Sgambati and Matthew P. Rocco, on the briefs).

Castronovo & McKinney, LLC, attorneys for respondent (Thomas A. McKinney, of counsel and on the brief; Anaïs V. Paccione, on the brief).

PER CURIAM

Defendants appeal from the June 12, 2025 Law Division order denying their motion to compel arbitration and to dismiss plaintiff Julia Williamson's complaint. Based on our de novo review, we conclude that the arbitration clause is enforceable. Accordingly, we reverse the trial court's order denying the motion to compel arbitration. We remand for the court solely to enter an order staying the case pending arbitration.

I.

We recount the salient facts from the motion record. Williamson was employed by defendants as a wellness coordinator from December 8, 2022 to April 29, 2024. As part of defendants' employment onboarding process, prospective employees were required to complete an online registration process that includes a request to assent to a "Mutual Agreement to Resolve Disputes and Arbitrate Claims" ("arbitration agreement").

Defendants used human resources software called Workday. This program automatically generated an email with instructions for employees to access defendants' network. A welcome email included the new employee's ID, which served as the user ID for Workday, and a temporary password. The email directed the employee to log into Workday using the temporary

2

password and to change it to a password of their own choosing, within specified security parameters. The instructions outlined the minimum requirements to ensure the new password was both unique and secure.

The employee could not access any network information nor sign any documents until this password was changed. The employee had full control over the creation of their password, subject to the security requirements, and only the employee knew the password. Control over the password remained exclusive to the employee, and employees were trained how to maintain its confidentiality.

No one could access a Workday account without entering the correct user ID and password. Similarly, the employer could not examine an employee's password, nor could it sign into the employee's account nor perform any actions as the employee. If an individual forgot their password, defendants could send a password reset link but could not view the actual password. Once an employee created their unique and confidential password, they could log in to sign the required onboarding documents.

After signing in with their user ID and confidential password, employees were notified of documents awaiting their signature. The arbitration agreement was the first document to be distributed in this online portal.

A-3303-24

Employees could then review and ultimately sign documents, including the arbitration agreement, at their convenience. Workday required each employee to download and review each document before signing. When they were ready to review the arbitration agreement, employees were required to open the document and scroll through it at their convenience.

To sign a document, the employee would click the box next to "I agree," located below the signature statement from the agreement. After signing all documents, the employee would "submit" by clicking that designated box. Although the employee would be able to scroll past the agreement box, they could not complete nor submit the form without acknowledging it in this fashion. Since Workday did not allow employees to write or to upload a signature image, the "I acknowledge" or "I agree" check-marked box served as their digital signature.

When an employee signed a document in Workday, an audit trail was automatically created. Defendants could access employee records, signed documents, and the authentication trail for all signed documents, including the arbitration agreement.

Upon her hiring, plaintiff logged into the system, and after several unsuccessful attempts to reset her password to the personal password,

4

reviewed and acknowledged each document, and submitted them through the application. The audit trail shows that she acknowledged the arbitration agreement on January 17, 2025, at 10:31:54.

The arbitration agreement begins with capitalized and bold-faced lettering stating:

> [] READ THE ATTACHED MUTUAL AGREEMENT TO RESOLVE DISPUTE AND ARBITRATE CLAIMS.
>
> As a condition of your employment with [defendants], you are required to agree to participate in [defendants'] dispute resolution and arbitration program which is described in detail in the attached Mutual Agreement to Resolve Disputes and Arbitrate Claims (the "Agreement"). Because participation in the dispute resolution and arbitration process is one of the considerations of your employment with [defendants], if you decide not to agree to the terms of the Agreement, [defendants] will consider your employment application to be withdrawn.

Substantively, the arbitration agreement required plaintiff to submit any covered claims to binding arbitration. The agreement defined claims as:

> Any and all disputes, claims or controversies arising out of your employment or the termination of your employment which could be brought in a court, including, but not limited to, claims under the Age Discrimination in Employment Act; Title VII of the Civil Rights Act of 1964; the Fair Labor Standards Act; the Family and Medical Leave Act; the Americans with Disabilities Act of 1990; Section 1981

5

through 1988 of Title 42 of the United States Code; state and local anti-discrimination laws; and any other federal, state, or local law, ordinance or regulation, and claims based on any public policy, contract, tort, or common law and any claim for costs, fees, and other expenses or relief, including attorney's fees.

The arbitration agreement also detailed the arbitration process, the forum, the procedure, the selection of the arbitrator, the payment of fees and expenses and the governing rules of the proceedings. In a designated heading, the arbitration agreement stated that it was governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

The arbitration agreement also specifically contained an "Applicable Law and Construction/Waiver of Jury Trial" clause which stated:

The law of the jurisdiction in which you are primarily employed will govern the substance of your grievance. However, all disputes regarding the enforcement of this Agreement, and any of the provisions of this Agreement or whether a party's claim is subject to this Agreement shall be determined in accordance with the law of the State of Maryland. All changes to the interpretation or enforceability of any provision of this Agreement shall be brought before the arbitrator, and the arbitrator shall rule on all questions regarding the interpretation and enforceability of this Agreement. In the event that any provision of this Agreement shall be construed to be unlawful or unenforceable, and if the offending provision can be deleted without affecting the primary intention of the parties as expressed herein, then the offending provision shall be so deleted or reformed an the remainder of this

Agreement shall remain in full force and effect as written.

This provision of the agreement concluded with this bold-faced and capitalized language:

> IF THIS AGREEMENT IS DETERMINED TO BE UNENFORCEABLE ANY CLAIMS BETWEEN YOU AND THE COMPANY RELATED TO YOUR EMPLOYMENT SHALL BE SUBJECT TO A NON-JURY TRIAL IN THE FEDERAL OR STATE COURT THAT HAS JURISDICTION OVER THE MATTER.

Above the space where plaintiff electronically signed her name, these statements appeared:

> By your signature below, you acknowledge receipt of this Agreement. You also acknowledge that this Agreement is a legal document which, among other things, requires you to grieve, and then to arbitrate, all claims you may have now or in the future with the [defendants] which otherwise could have been brought in court. YOU ALSO ACKNOWLEDGE THAT YOU HAVE HAD SUFFICIENT TIME TO READ AND UNDERSTAND THE TERMS OF THIS AGREEMENT AND THAT BY RECEIPT OF THIS AGREEMENT, [DEFENDANTS HAVE] INFORMED YOU THAT YOU HAVE A RIGHT TO SEEK LEGAL COUNSEL REGARDING THE MEANING AND EFFECT OF THIS AGREEMENT.
>
> By signing this Arbitration Agreement electronically, you knowingly, voluntarily[,] and freely agree to accept and be bound by the terms of this Agreement.

7

> By signing electronically, you are giving up your rights to initiate or participate in Class Actions.
>
> I hereby warrant that I have understood and agreed to be bound by the terms and conditions provided herein.

Plaintiff sued defendants alleging that she was the victim of various forms of discrimination under the New Jersey Law Against Discrimination. N.J.S.A. 10:5-1 to -50.2. Defendants moved to compel arbitration and to dismiss plaintiff's complaint.

A Law Division judge denied defendants' application, without prejudice, and allowed them to refile their motion after "limited discovery on the issue of whether [p]laintiff signed the arbitration agreement . . . with a limited deposition on that issue alone." After discovery, defendants refiled their motion. In an oral ruling, a second Law Division judge denied the application:

> I am not convinced that the process that [plaintiff] went through that day demonstrates a knowing and voluntary agreement to go to arbitration, and consequently, I'm going to deny the defendant's application to force this matter to arbitration. And this matter will continue in this court.

Defendants argue on appeal that a valid and enforceable arbitration agreement existed between the parties, and that plaintiff's electronic signature is sufficient to bind her to its terms. In response, plaintiff argues that she did not unequivocally agree to the arbitration agreement because there was no

8

knowing and voluntary waiver. She further asserts that she neither acknowledged nor signed the agreement, and that defendants failed to obtain her signature and attempt to "manufacture assent electronically."

II.

"The enforceability of a contractual arbitration provision is a question of law," which we review de novo. Fazio v. Altice U.S., 261 N.J. 90, 103 (2025). Thus "we 'need not give deference to the [legal] analysis by the trial court.'" Santana v. SmileDirectClub, LLC, 475 N.J. Super. 279, 285 (App. Div. 2023) (alteration in original) (quoting Goffe v. Foulke Mgmt., 238 N.J. 191, 207 (2019)).

"New Jersey has a long-standing policy favoring arbitration as a means of dispute resolution." Santana, 475 N.J. Super. at 285; see also Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002) (acknowledging "the affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism for resolving disputes"). Application of this policy, however, "is not without limits." Santana, 475 N.J. Super. at 285 (quoting Gayles by Gayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 23 (App. Div. 2021)).

"When reviewing a motion to compel arbitration, courts apply a two-pronged inquiry: (1) whether there is a valid and enforceable agreement to

arbitrate disputes; and (2) whether the dispute falls within the scope of the agreement." Wollen v. Gulf Stream Restoration & Cleaning, LLC, 468 N.J. Super. 483, 497 (App. Div. 2021). "An arbitration provision is not enforceable unless [there is] reasonable notice of its existence." Santana, 475 N.J. Super. at 285 (quoting Wollen, 468 N.J. Super. at 498). Also, to enforce a waiver-of-rights provision, the law "requires some concrete manifestation of the employee's intent as reflected in the text of the agreement itself." Leodori v. CIGNA Corp., 175 N.J. 293, 300 (2003) (quoting Garfinkle v. Morristown Obstetrics & Gynecology Assocs., 168 N.J. 124, 135 (2001)).

"Clickwrap, 'click-through' or 'click-to-accept' . . . [agreements], require[] 'a user [to] consent to any terms or conditions by clicking on a dialogue box on the screen in order to proceed with the internet transaction.'" Wollen, 468 N.J. Super. at 496 (quoting Skuse v. Pfizer, Inc., 244 N.J. 30, 55 n.2 (2020)). Clickwrap agreements "are routinely enforced by the courts" because "[b]y requiring a physical manifestation of assent, a user is said to be put on inquiry notice of the terms assented to." Santana, 475 N.J. Super. at 288-89 (alteration in original) (first quoting Skuse, 244 N.J. at 55 n.2; and then quoting Applebaum v. Lyft, Inc., 263 F. Supp. 3d 454, 465 (S.D.N.Y. 2017)). In the context of clickwrap agreements, "[w]here there is no evidence that the

offeree had actual notice of the terms of the agreement, the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms." Id. at 288 (alteration in original) (quoting Meyer v. Uber Techs., Inc. 868 F.3d 66, 74-75 (2d Cir. 2017)).

In Santana, we distinguished between circumstances in which assent is required before being able to access a company's services and those where prior assent is not mandated. See id. at 286-88. There, as here, the plaintiff had to register assent to the company's terms before being able to access its services. Id. at 291 ("[H]ad plaintiff left the 'I agree' box unchecked, the 'Finish My Account' bar on the company's website would not have functioned."). The Court in Santana, therefore, concluded the clickwrap arbitration agreement at issue in that matter was enforceable.

As plaintiff does not dispute that the arbitration agreement encompasses her claims, our de novo review here is limited to the first Wollen prong-determining whether the court erred in finding the arbitration agreement was not enforceable.

The clickwrap agreement at issue, which was specifically prioritized in the online employee registration system, is enforceable under prevailing case law. Plaintiff was provided with the complete arbitration agreement during her

11

online registration—well before she began her employment with the defendant—and acceptance of the agreement was expressly made a condition of her employment. Furthermore, to proceed with the onboarding process, plaintiff was required to click both the "I agree" and "submit" buttons. The date and time of plaintiff's acceptance were recorded by the computer system and are reflected in the audit trail.

Plaintiff has not presented any credible evidence to dispute defendants' assertion that her name, along with the specific date and time of her electronic signature, demonstrates her assent to the arbitration agreement. Plaintiff's suggestion that, despite the security protections and the affirmative steps required to establish her registration account, someone else might have acknowledged receipt of the relevant documents is unsupported by the record and lacks credibility. These assertions do not undermine the enforceability of the otherwise valid arbitration agreement. Plaintiff has not demonstrated the requisite evidence to defeat the motion to compel arbitration.

Finally, because the arbitration agreement is governed by the FAA, we remand the matter for the entry of an order staying any further action in the Law Division pending arbitration according to prevailing law. See Santana, 475 N.J. Super. at 291-92; see also Perez v. Sky Zone LLC, 472 N.J. Super.

240, 251 (App. Div. 2022) (citing 9 U.S.C. § 3; N.J.S.A. 2A:23B-7(g)) (stating "[u]nder the F[ederal Arbitration Act] and the [New Jersey Arbitration Act] a court must stay an arbitrable action pending the arbitration.").

Reversed and remanded for the limited purpose of entering an order staying the case pending arbitration. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-3303-24